**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

```
_____
                               )
THE FUND FOR ANIMALS, et al    )
                               )
        Plaintiffs,            )   Civil Action No. 02-2367
                               )   (EGS)
    v.                         )
                               )
GALE NORTON, et al,            )
                               )
        Defendants.            )
_____)
_____)
                               )
GREATER YELLOWSTONE            )
  COALITION, et al             )
                               )
        Plaintiffs,            )
                               )
    v.                         )
                               )
GALE NORTON, et al,            )
        Defendants.            )
_____)
```

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Greater Yellow Coalition ("GYC") Plaintiffs' Motion to Enforce the Court's December 16, 2003 Opinion and Order. The GYC plaintiffs charge that the National Park Service's new interim rules governing snowmobiling and other winter recreational use in Yellowstone and Grand Teton National Parks violate a prior order of this Court, the National Park Service Organic Act, and other substantive legal requirements. Plaintiffs seek an order from this Court requiring the Park Service to adhere to specific adaptive management

standards developed by the agency in 2003 to ensure compliance with these legal requirements.  Upon careful consideration of the motion, the responses and replies thereto, the entire record herein, as well as the governing statutory and case law, and for the following reasons, the Court finds that the relief plaintiffs seek here would expand the relief actually granted in 2003 and exceed the relief typically available in procedural challenges to administrative agency action.  Accordingly, the Court will **DENY** plaintiffs' motion.  Because this decision is reached on procedural grounds, it will not preclude plaintiffs from raising their substantive legal arguments in any potential future cases involving similar issues.

**I. BACKGROUND**

This case originally came before the Court on plaintiffs' challenge to the National Park Service's 2003 decision to allow recreational snowmobiling and trail grooming in Yellowstone National Park, Grand Teton National Park, and the John D. Rockefeller, Jr. Memorial Parkway (collectively "Yellowstone" or the "Parks").  *See* Consol. Am. Compl. ¶¶ 2-3.  On December 16, 2003, this Court, finding both Administrative Procedure Act ("APA") and National Environmental Policy Act ("NEPA") violations, vacated and remanded the Service's 2003 Final Rule governing winter use in the Parks.  *See Fund for Animals v.*

*Norton*, 294 F. Supp. 2d 92, 115 (2003) (vacating and remanding Winter Use Plan Final Rule, 68 Fed. Reg. 69,268 (Dec. 11, 2003)("2003 Rule")).  Following this Order and a related decision in the District of Wyoming, the National Park Service initiated a Temporary Winter Use Plan Environmental Assessment ("EA") and proposed special regulations to govern recreational oversnow vehicle use at the Parks.  *See* 69 Fed. Reg. 54072 (Sept. 7, 2004).  This process culminated in a Final Rule that effectively supersedes all prior regulations governing winter use in the Parks.  *See* Special Regulations; Areas of the National Park System, 69 Fed. Reg. 65348 (Nov. 10, 2004)("2004 Rule")(amending 7 C.F.R. §§ 7.13, 7.21, 7.22).

The 2004 Rule is intended to manage winter visitation and recreational use in the Parks for up to three winter seasons (*i.e.*, through the winter of 2006-2007).  The rule imposes new daily entry limits on the number of snowmobiles that may enter the parks, requires the use of commercial guides in Yellowstone Park, and requires recreational snowmobiles and snowcoaches to meet certain air and sound technology restrictions.  *See* 2004 Rule, 69 Fed. Reg. at 65348.  The Park Service expects that this three-year plan will allow the NPS to study the long-term effects of winter use in the parks in order to develop a new long-term winter use rule.  *See id.* at 65350.

The GYC plaintiffs are unsatisfied with the new rule and argue that the Service's "same old bundle of restrictions" will

not be effective in preventing impairment of Park resources.  *See* Pls.' Mot. to Enforce at 3.  Specifically, plaintiffs argue that the Park Service has failed to correct the deficiencies that led the Court to vacate its 2003 Winter Use Rule.  *See id.* at 15 (noting that "the APA violation that this Court identified last December remains unremedied").  Rather than seeking an order vacating the 2004 Rule, however, plaintiffs seek to have this Court "effectuate" its December 2003 Order by ordering the Park Service to adhere to certain standards set forth in the old 2003 Rule.  *See id.* at 2 (requesting that this Court order the Park Service to "adhere to the adaptive management standards that were developed by the agency itself in 2003").  This relief, according to plaintiffs, flows from the Court's "'wide discretion' to modify 'the terms of an injunctive decree if the circumstances, whether of law or fact, obtaining at the time of its issuance have changed, or new ones have since arisen.'"  Pls.' Reply at 2 (citing *System Fed'n No. 91, Ry. Employees' Dep't, AFL-CIO v. Wright*, 364 U.S. 642, 647-48 (1961)).  Plaintiffs' Motion to Enforce is now ripe for judgment.

## II. DISCUSSION

At the outset, the Court notes that district courts clearly have the authority to enforce the terms of their mandates.  *See Int'l Ladies' Garment Workers' Union v. Donovan*, 733 F.2d 920, 922 (D.C. Cir. 1984) (observing that the exercise of this

authority is "particularly appropriate" where "an administrative agency plainly neglects the terms of a mandate").  In this case, however, the Court is not in a position to evaluate the merits of plaintiffs' claims.  While plaintiffs' motion is styled as one to "enforce" the Court's December 16, 2003 Order, it is in essence a challenge to the National Park Service's 2004 Temporary Winter Use Plan -- not the 2003 Decision that was the subject of the 2003 Order.  The 2004 Decision is a new "final agency action" resulting from an entirely new rule making process; it imposes different substantive requirements, involves a different scope, and is based upon a different administrative record, including a new Environmental Assessment ("EA") and Finding of No Significant Impact ("FONSI"), which are not before the Court in this case. *Cf. Int'l Ladies Garment Workers*, 733 F.2d at 923 (where the Secretary of Labor "simply reimplemented precisely the same rule that [the D.C. Circuit] vacated as 'arbitrary and capricious' in its first decision").  Consequently, the proper avenue for plaintiffs' arguments is a new lawsuit squarely challenging the validity of the 2004 Decision.[1]

The nature of the relief requested here and a close examination of the grounds of this Court's 2003 Order supports

---

[1] Indeed, co-plaintiffs in this case, the Fund for Animals, did file a new complaint seeking review of certain aspects of the 2004 Decision.  *See Fund for Animals v. Norton*, Civ. No. 04-1913 (D.D.C.)(EGS).

5

this conclusion.  Plaintiffs argue that specific adaptive management standards are necessary to "ensure compliance with the Organic Act and the other applicable legal requirements."  Pls.' Mot. To Enforce at 2.  They seek a judicial decree imposing these standards to "guarantee adequate protection of air and water quality, natural quiet, and wildlife next season." *Id.*  However, the Court order plaintiffs are seeking to "enforce" was narrowly grounded on APA and NEPA violations regarding the 2003 rule making process and did not reach plaintiffs' substantive legal challenges.  *See, e.g., Fund for Animals*, 294 F. Supp. 2d at 108 n.12 ("Because the Court remands on the grounds that the agency reversal in position was arbitrary and capricious, the Court need not reach Plaintiffs' Organic Act and Endangered Species Act claims."); *id.* at 112 ("It is a breakdown in procedure, rather than a disagreement with the decision reached, which forms the basis of a NEPA claim.").  Although the APA provides that a reviewing court shall "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," 5 U.S.C. § 706(2), it generally does not authorize a court to "substitute its judgment for that of the agency."  *See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).  Accordingly, reviewing courts are hesitant to order administrative agencies to take specific actions to remedy procedural violations.  *See NLRB v.*

*Food Store Employees Union, Local 347*, 417 U.S. 1, 8-9 (1974); *Nat'l Tank Truck Carriers v. EPA*, 907 F.2d 177, 185 (D.C. Cir. 1990) ("We will not, indeed we cannot, dictate to the agency what course it must ultimately take").

### III. CONCLUSION

This Court restates its firm belief that the National Park Service Organic Act requires the Service to promote and regulate our National Parks in such a manner as to "leave them unimpaired for the enjoyment of future generations." 16 U.S.C. § 1. And it may well be that the 2004 Rule governing winter use in the Parks violates this conservation command. However, plaintiffs' Motion to Enforce is simply not the appropriate vehicle to bring these objections before the Court. If plaintiffs take issue with the substance of the 2004 Rule, they must bring suit challenging the 2004 Rule directly.

Accordingly, GYC plaintiffs' Motion to Enforce the Court's December 16, 2003 Opinion and Order is **DENIED.**


**Signed:    Emmet G. Sullivan**
**            United States District Judge**
**            September 28, 2005**